UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE:                              )
                                    )
CHICAGO HUDSON, LLC                 )    No. 06 B 05596
                                    )
            Debtor.                 )

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON
## KINGSBURY OBJECTION TO SAME UNDER 11 U.S.C. § 365(i)

Following trial with evidence on the issue of whether creditor Kingsbury is "in possession" of subject property under 11 U.S.C. § 365(i), the following is made and will be entered as Findings of Fact and Conclusions of Law, ruling that Kingsbury is not "in possession" under that provision. Trial was held pursuant to pretrial order, and this ruling will apply as a dispositive ruling on the § 365(i) issue unless Kingsbury seeks to reopen it on motion and notice for good cause shown.

### INTRODUCTION

Among many issues posed by the parties,[1] Kingsbury, who has a pre-bankruptcy contract to purchase the subject premises, objected to the Debtor's motion to sell certain assets and other motions on the following grounds:

---

[1] Kingsbury seeks dismissal of this Chapter 11 proceeding or, alternatively, abstention by the Court from hearing it, because the Debtor allegedly filed this case in bad faith for the improper purpose of benefitting its principals in order to reduce their personal liability. Debtor seeks to sell the subject property that it contracted pre-bankruptcy to sell to Kingsbury. The § 365(i) hearing on Kingsbury's objection to sale was the first step taken by the Court to determine good faith of the filing and viability of the sale motion.

Debtor has also moved to reject the Kingsbury purchase contract, and Kingsbury raised other objections to the sale.

**FIRST**

Kingsbury seeks to enforce the Debtor's contract obligation to convey the real estate under its contract because it claims to be "in possession" of the property. As a result, §365(i) of the Bankruptcy Code is said to preclude the Debtor from rejecting the contract and thereby avoid its obligation to deliver title under the "land sale contract" between Kingsbury and the Debtor, unless Kingsbury elects to have the contract terminated-which Kingsbury declines to do.

**SECOND**

If Kingsbury is not "in possession" of the Debtor's property, Debtor would be able to reject its Sale-Purchase Agreement with Kingsbury. However, under §365(j) of the Bankruptcy Code unless Kingsbury consents to a sale of the property (which it declines to do), any rejection of the contract would entitle Kingsbury to (i) a lien on the property to repay Kingsbury its contract earnest money, a portion of which in the amount of $468,000 was released to the Debtor and its corporate affiliate, Rezmar Corporation for use, and (ii) satisfaction of that lien from proceeds of the Debtor's attempted sale of the property under 11 U.S.C. § 363.

On June 2, 2006, the Court conducted trial with evidence limited to the question of whether Kingsbury was "in possession" of the Debtor's real estate on the date Debtor filed its Chapter 11 petition herein. Testifying for Kingsbury was Nancy Carreon ("Carreon"), Director of Construction for Kingsbury's real estate development company affiliate, Centrum Properties, Inc. ("Centrum"). Testifying for the Debtor was Robert Williams ("Williams"), President and CFO of the Debtor's LLC Manager/affiliate, Rezmar Corporation.[2]

---

[2] Kingsbury allegations admitted or partly admitted by the Debtor are cited herein as "Answ. ¶___". A transcript of the Carreon and Williams trial testimony is cited herein as "Tr. at ___". The Debtor's Trial Exhibits are cited to herein as "CH Exh. ___".

## FINDINGS OF FACT

1. The Debtor's only significant asset is a .94-acre vacant, paved parcel of unimproved real estate located at the southwest corner of West Chicago Avenue between North Kingsbury Street and North Hudson Street, Chicago, Illinois, and commonly known as 750 North Hudson Street, Chicago, Illinois ("Premises"). Answ. ¶1. The Debtor purchased the Premises in 2001 from a different Centrum affiliate, MW-CPAG Holdings, L.L.C., for the price of $8,000,000 with the intent to develop a high-rise residential building. Id. Approximately six months after acquiring the Premises, the Debtor obtained from Broadway Bank a $10,940,000 loan secured by a mortgage of the Premises ("Mortgage"). Answ. ¶2.

2. Situated on the Premises in 2001 was a sales trailer ("Trailer") that has remained there through the present. Tr. 9, 36-40. CH Exh. A-B. C. In prominent red letters above the entrance door to the Trailer appear the words "Hudson Tower", which had been the name of the Debtor's planned residential development, and which today still remain above the door. Tr. 38-39.

3. The Debtor actively used the Trailer for marketing activities at various times between 2001 and January 2005 (Tr. 44-46). Inside the Trailer the Debtor stored its materials, supplies and other personal property needed for marketing the residential building it had planned to develop on the Premises. Tr. 44-45. The Debtor also paid real estate taxes assessed on the Premises, secured and limited access to the Premises by installing a fence around its perimeter, insured the Premises and Trailer, and entered into utility and service contracts to make the Trailer operable and functional as a residential development marketing office. Id.

4.     The Debtor's efforts to develop the Premises were unsuccessful, and it never broke ground for construction of its planned residential building. Answ. ¶4; Tr. 46. On January 25, 2005, the Debtor entered into a contract ("Sale-Purchase Agreement") to sell the Premises to a different Centrum affiliate known as AG-IV Realty Acquisition Corp. ("AG-IV") for the price of $9,000,000. Answ. ¶4; Tr. 6, 48; CH Exh. D.

5.     The terms of the January 25, 2005 Sale-Purchase Agreement, would obligate the Debtor to deliver at closing an executed Special Warranty Deed conveying good and marketable legal title, free and clear of all liens and encumbrances on Premises except for certain Permitted Exceptions. CH Exh. D §§8.1(a), 9.1(a). Specifically excluded in the definition of permitted title exceptions were exceptions relating to the Seller's financing and any mechanic's liens. Id. §4.1-3. At closing, the Debtor would also be required to deliver an executed assignment of all utility and service contracts relating to the Premises and the Trailer, and "all keys in Seller's possession or control to entrance doors to, and equipment and utility rooms located in, the [Premises] (including, without limitation, the Sales Trailer)." Id. §8.1(f), (l). However, as described below that Agreement never closed.

6.     By letter dated February 24, 2005, the Debtor agreed that AG-IV Realty Acquisition Corp. was to "have the right to use and access the Sales Trailer . . . and . . . park motor vehicles in designated parking areas on the [Premises]." Answ. ¶6; Tr. 48; CH Exh. F.

7.     The Debtor leased the paved portion of the Premises to Premier Valet Chicago ("PVC"), Inc. pursuant to a written month-to-month lease agreement dated June 30, 2005. CH Exh. H. Thereafter through the present, PVC has used the paved portion of the Premises for valet parking of local restaurant patrons' vehicles. Tr. 49.

8.      AG-IV, as Assignor, and CP Kingsbury, L.L.C. ("Kingsbury"), as Assignee, entered into an Assignment of Sale-Purchase Agreement, Guaranty Agreement, and Earnest Money Escrow Account dated August 17, 2005. Tr. 7, 49; CH Exh. G.

9.      The Debtor and Hudson entered into a Second Amendment to Sale-Purchase Agreement dated August 23, 2005 ("Second Amendment") (Answ. ¶7; Tr. 50), pursuant to §8 of which the Debtor granted Kingsbury "a license to access the [Premises], remove the existing fence and [Debtor's] advertising material and commence marketing activities for [Kingsbury's] proposed development, at [Kingsbury's] sole cost and expense." Section 8 of the Second Amendment further stated that "[Kingsbury's] marketing activities may include, but are not limited to, installation of advertising promotions, landscaping and use and improvement of the Sales Trailer, [Debtor] acknowledging that [Debtor] has no rights of ownership, or to possession or use of the Sales Trailer." CH Exh. I §8.

10.     Following execution of the Sale-Purchase Agreement in January 2005, the Debtor removed most but not all its personal property from the Trailer (Tr. 30, 50-51), and Kingsbury neither used nor entered the Trailer (Tr. 27, 48). The Debtor has never turned over the Keys to the Trailer to either AG-IV, Kingsbury or Centrum (Tr. 28-29, 51). Nor has the Debtor transferred to Kingsbury or otherwise given it permission to enjoy any aspect or incident of possession of the Premises beyond the limited authorization granted under the February 24, 2005 letter agreement between the Debtor and AG-IV or the Second Amendment to the Sale-Purchase Agreement. Tr. 52. As a representative of Centrum, Carreon entered the Trailer twice after it was broken into (Tr. 28-29), but was not involved in the subsequent repair or replacement of the Trailer's door handle and lock. (Tr. 29-30).

11. Kingsbury has conducted, and continues to conduct, through its affiliate Centrum Properties, Inc. ("Centrum"), the following activities on the Real Estate:

   a. Demolished the existing guard tower located at the northwest corner of the Real Estate. Centrum rented two 10-yard construction waste containers for the removal of debris.

   b. Removed all existing "Hudson Tower" marketing signage from the Real Estate, including removing two large billboards: one at the northwest corner, one at the northeast corner, as well as signage on the Hudson Tower marketing trailer. Centrum rented two 10-yard construction waste containers for the removal of debris.

   c. Centrum assumed the responsibility for maintaining the vacant Real Estate, including the removal of debris and litter, providing lawn and weed maintenance, filing potholes in asphalt paving and providing snow removal as required for the parking lot and adjacent city sidewalk.

   d. Centrum assumed the responsibility for meeting with the City of Chicago Streets and Sanitation inspectors regarding maintenance and city requirements for the Real Estate.

   e. Centrum has provided, and continues to provide, parking for employees and construction staff on the Real Estate.

   f. Centrum hired the Initial Security Co. to provide security personnel for the Real Estate. Centrum thereby continues to ensure the integrity of the fence at the perimeter of the Real Estate to prevent access by unwanted vehicles and persons.

12. Kingsbury did nothing to develop the Premises between February 24, 2005, and May 16, 2006, when the Debtor filed its Chapter 11 petition herein. Tr. 6. During that time, Centrum has made use of the Premises by allowing use of the Premises as a parking lot by its employees and contractors those of its affiliates other than Kingsbury who own real estate developments nearby the Premises. Tr. 7-8, 11-15, 21-26. Centrum has provided or paid for certain maintenance, security and municipal ordinance compliance services at Premises to in

connection with the parking lot use just described. Tr. 14-15, 21-26. Centrum's removal of billboard signs at the Premises and certain signage on the Trailer was the only activity at the Premises by Centrum, that Kingsbury was specifically authorized to conduct under February 24, 2005 letter agreement between the Debtor and AG-IV or the Second Amendment to the Sale-Purchase Agreement. Tr. 10, 31, 50-51.

13. Prior to the filing of the Debtor's Chapter 11 petition, apart from incurring legal and other expenses, Kingsbury deposited earnest money in the amount of $1,000,000 pursuant to the Sale-Purchase Agreement, of which $468,000 was disbursed to the Debtor for its use. Answ. ¶9. It has been represented by Debtor's counsel that this disbursement will be returned to the escrow, but that has not yet happened. The Debtor could not close on the closing date and thereby defaulted under the Sale-Purchase Agreement when Broadway Bank refused to release its mortgage on the Premises without being paid in full. Id. ¶10. As a result, in January 2006, Kingsbury filed a lawsuit against the Debtor in the Circuit Court of Cook County ("Lawsuit") for specific performance of the Sale-Purchase Agreement. Id.

14. The Debtor introduced principals of Royal Apartments USA, Inc. ("Royal") to Kingsbury in or around April 2006. Answ. ¶11. Discussions between Royal and Kingsbury concerning acquisition and development of the Premises were unsuccessful as of the first week of May 2006. *Id.* Royal thereafter submitted to the Debtor an offer to purchase the Premises ("Royal Offer"). Id. ¶13.d.

15. At a hearing held on May 26, 2006, one of Debtor's LLC Members, Daniel Mahru, testified that prior to execution of the Sale-Purchase Agreement, the Debtor retained John Thomas as a broker to market the Premises and, further, that Mr. Thomas engaged in active

discussions with at least ten potential purchasers, as outlined in his affidavit tendered in open Court at the hearing. Answ. ¶11.e. Additionally, the Debtor moved to Employ Millennium Properties to act as a broker and bid representative to market the property post-petition. *Id.*, and that motion was allowed.

16. A procedure has been approved pointing toward a possible sale to Royal or a higher bidder under 11 U.S.C. § 363, scheduled for July 31, 2006.

17. Factual matters set forth in the Conclusions of Law will stand as additional Findings of Fact.

## CONCLUSIONS OF LAW

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter constitutes a core proceeding under 28 U.S.C. § 15(b)(2)(A), (O).

Section 365(i) of the United States Bankruptcy Code, 11 U.S.C. § 101 et. seq. (The "Bankruptcy Code"), if applicable, precludes a debtor from avoiding its obligation to deliver title under a land sale contract where the purchaser is "in possession" of the premises, unless the purchaser elects to have the contract terminated. See 11 U.S.C. § 364(i); see also McCannon v. Marston, 679 F.2d. 13, 18 (3rd Cir. 1982) (concluding that § 365(i) "specifically concerns the case in which 'trustee rejects an executory contract of the debtor for the sale of real property under which the purchaser is in possession,'" and is not limited in application to land installment contracts); In re Maier, 127 B.R. 325, 327 (Bankr. W.D.N.Y. 1991) (same).

"Possession" for purposes of § 365(i) is not defined in the Bankruptcy Code; however, courts have looked to federal and state law in determining whether a purchaser is in possession.

-8-

Kingsbury's assertion that it is currently "in possession" of the Premises within the meaning of 11 U.S.C. § 365(i) has not been proven factually. In the Second Amendment to the Sale-Purchase Agreement, the Debtor granted Kingsbury a license to access the Property from and after October 1, 2005. Kingsbury would not have needed a license to gain access of the Premises if was in possession thereof. In order for Kingsbury to be "in possession" of the Premises, under authority cited below, it must show facts of actual physical possession. The Sale-Purchase Agreement itself was not to put Kingsbury in possession until after a sale closing would take place. From the evidence, it is clear that (i) the Premises are vacant and unoccupied, (ii) the Debtor remains responsible for payment of real estate taxes, (iii) the Debtor paid for the fence which currently secures the Premises, (iv) following execution of the Sale-Purchase Agreement, the Debtor has retained possession and control of the Trailer, (v) the Debtor currently leases the paved portions of the Premises to PVC for the specific purpose of parking cars on the Premises (resulting in income included in the Debtor's Schedules and Statement of Financial Affairs), and (vi) the Debtor currently maintains liability insurance on the Premises and Trailer.

Kingsbury asserts that because the February 24, 2005 letter agreement together with ¶8 of the Second Amendment granted it a license to gain access to the Trailer, park vehicles on the Premises and perform marketing activities there, it therefore is "in possession" of the Premises. Paragraph 26 of the Sale-Purchase Agreement indicates the agreement is governed by Illinois law. Under Illinois law, the mere granting of a license gives the licensee a right to use the premises for a specific purpose, whereas the owner of premises retains possession and control thereof. <u>Roswell v. City of Chicago</u>, 69 Ill. App. 3d 996, 1001, 386 N.E. 2d 866, 870 (1979). Moreover, Illinois law has defined "possession" to include, among other things, "that position or relation which one occupies, with

Document      Page 10 of 12

respect to a particular piece of land which gives to him its use and control and excludes all others from a like use or control." Ft. Dearborn Lodge, I.O.O.F. v. Kline, 115 Ill. 177, 3 N.E. 272 (1885).

Generally, possession of real estate has been found where a party physically possesses the land from and after the time of purchase. Crowell v. Druley, 19 Ill. App. 509 (1886). Possession was found, for example, where a sturdy fence had been erected around the property that would have been evident to anyone attempting to enter the property and which excluded the world from enjoying and using it. Chicago Title & Trust Co. v. Drobnick, 20 Ill.2d 374, 169 N.E. 2d 792, 795-796 (1960). Similarly, possession was found where the parties claiming possession paid real property taxes, purchased insurance, cut and removed trees and being known in the area as the owner of the property. Klingel v. Kehrer, 81 Ill. App. 3d 431, 401 N.E. 2d 560, 566 (1980).

Possession of real estate in Illinois has not been found where lots were vacant and unoccupied as is the case here. Glos v. Miller, 213 Ill. 22, 72 N.E. 714 (1904). Nor where a party has failed to erect a fence or improve the land before claiming adverse possession. Robertson v. Bachman, 352 Ill. 291, 296 185 N.E. 618, 620 (1933). Or where it has performed trivial acts on the real estate such as picking flowers or conducting a survey. Klingel v. Kehrer, 81 Ill. App.3d 431, 401 N.E. 2d 560, 566 (1980).

Here Kingsbury failed to make use of the Trailer or conduct any marketing or other authorized activities upon the Premises. The only authorized activity at the Premises by its real estate development affiliate Centrum has been removal of billboard signs. Centrum's unauthorized use of the Premises as a parking lot for its employees and contractors and those of its affiliates other than Kingsbury who own real estate developments nearby the Premises does not amount to "possession" of the Premises by Kingsbury.

Kingsbury's reliance on §365(i) of the Bankruptcy Code is misplaced. The legislative history of §365(i) suggests that "possession" is concerned with buyers whose connection with the land is more permanent than ephemeral, more continuous than intermittent, more exclusive than shared, and more personal than delegable. In re Summit Land Co., 13 B.R. 310, 316-18 (Bankr. D. Utah 1981). See also In re Silberkraus, 235 B.R. 890, 907 n. 4 (Bankr. C.D.Cal. 2000) (same); In re Balco Equities Ltd., Inc., 323 B.R. 85, 97 (Bankr. S.D.N.Y. 2005) (same). Section 365(i) was never intended to be applied to circumstances similar to the case at bar. The legislative history of §365(i) clearly indicates that the provision was originally enacted because of a concern for "obviating the hardship involved in forcing a purchaser already in possession to leave." McCannon v. Marsten, 679 F.2d 13, 18 (3rd Cir. 1982). The Legislative History and Comments for §365(i) state that subsection (i) gives a purchaser of real property under a land installment sales contract protection similar to that §365(h) provides to lessees. If the contract is rejected, the purchaser "in possession" may choose to remain in possession or may treat the contract as terminated. If the purchaser remains in possession, he is required to continue to make the payments due, but may offset damages that occur due to rejection. The Debtor would then be required to deliver title, but is relieved of all other obligations to perform. H.R. Rep. No. 595, 95th Cong., 1st Sess. 349 (1977); S. Rep. No. 989, 95th Cong., 2nd Sess. 60 (1978).

Kingsbury does not qualify as a purchaser in possession under §365(i). In cases applying §365(i), strong evidence showed that a purchaser was in physical possession of the property such actually leasing and occupied improved property in question. McCannon, 679 F.2d at 17; In re Maier, 127 B.R. 325, 327 (Bankr. W.D.N.Y. 1991).

Although Kingsbury is not a "purchaser in possession" as required under §365(i), the provisions of §365(j) nonetheless do apply. Kingsbury has a lien on the Premises for repayment of the earnest money deposit, including $468,000 that was distributed to the Debtor for its use from earnest money. It is asserted by Debtor that its principals Mahru and Rezko have agreed to put back into escrow $468,000 plus lost interest in cash to pay off in full lien of Kingsbury on the Premises. But as of the date of hearing, those funds had not been returned and Kingsbury now holds a § 365(j) lien for the earnest money deposit, including monies withdrawn therefrom.

## CONCLUSION

The Premises have been exposed to the market prior to bankruptcy, and with the further marketing underway by a broker there may be sufficient marketing by the date of sale now scheduled for July 31, 2006, to enable a meaningful testing of the market through opportunities of interested parties to bid. Therefore, the sale process was approved.

By separate order, the § 365(i) ground asserted by Kingsbury in opposition to Debtor's motion to sell its assets is now rejected, thus opening the way for sale to be held. But sale must be subject to Kingsbury lien under § 365(j) unless the earnest money deposit is entirely restored with lost interest and then refunded.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated and entered this 24th day of July 2006.